❒ Original ☐ Duplicate



CLERK'S OFFICE
A TRUE COPY
Jan 13, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| *(Briefly describe the property to be searched* | ) | | |
| *or identify the person by name and address)* | ) | Case No. | 26   MJ   1 |
| Information associated with the TikTok accounts, | ) | | |
| that are stored at premises controlled by TikTok | ) | | |
| Inc., further described in Attachment A | ) | | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____01/27/2026_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____01/13/2026 at 11:30 a.m._____          *William E. Duffin*
*Judge's signature*

City and state:   _____Milwaukee, Wisconsin_____          Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

      This warrant applies to the electronic data and information associated with the following TikTok accounts (the Accounts) that are store at premises owned, maintained, controlled, or operated by TikTok, Inc., a company headquartered at 5800 Bristol Parkway, Suite 100, Culver City, California 90230:

1. Username: @halfdayandy1.1 and any account tied to it by cookies or by user-provided identifiers such as email addresses or phone numbers.

## <u>ATTACHMENT B</u>

### Items to be Searched for and Seized

### Particular Things to be Produced By TikTok to the Government

A.        To the extent that the information described in Attachment A is within the possession, custody, or control of TikTok, including any messages, records, files, logs, or information that have been deleted but are still available to TikTok or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), TikTok is required to disclose the following information to the government for each account or identifier listed in Attachment A

From the date the account was created to the present:

  a. Subscriber Information, as defined in TikTok's Law Enforcement Guidelines as containing, at a minimum, the following information: TikTok username, Email address(es), Phone number(s), Account creation date, IP address at account creation, Device information; Log-in / log-out data, as defined in TikTok's Law Enforcement Guidelines as containing IP address logs from account activity within the Accounts;

  b. Interaction data, as defined in TikTok's Law Enforcement Guidelines as containing non-content IP address logs for interactions as well as video creation time / dates associated with the Accounts;

  c. Content data, as defined in TikTok's Law Enforcement Guidelines as containing video content, comments, and direct message content.

B.        Once TikTok produces to the government the information described above, the government will search for information that constitutes evidence of violations of the crime(s)

under investigation, as further described in the affidavit, which is incorporated herein by reference.[3]

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

---

[3] The United States, and its forensic and law enforcement partners (the government), will seize the information described herein only for investigative purposes and for probable discovery pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Federal Rules of Criminal Procedure 16(a)(1)(E) and 26.2. The government will examine the seized information to identify information that is relevant to the matter under investigation and will thereby exercise respect for the information owner's personal and Constitutional privacy interests. Litigants are invited to contact the assigned AUSA to address privacy or other concerns.

CLERK'S OFFICE
A TRUE COPY
Jan 13, 2026
s/ MMK

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Information associated with the TikTok accounts,<br>that are stored at premises controlled by TikTok<br>Inc., further described in Attachment A** | )<br>)<br>)<br>)<br>)<br>)    Case No.   26    MJ    1 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 115(a)(1)(B) | Attempt to influence federal officer by threat |
| 18 U.S.C. § 875(c) | Threat to injure |
| 18 U.S.C. § 2261A(2) | Cyberstalking |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua Eagen, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 01/13/2026

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Joshua Eagen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2020. I am assigned to the Joint Terrorism Task Force ("JTTF") and am based out of the Milwaukee Field Office. I am involved in investigations of persons suspected of violations of Federal law in the State of Wisconsin and throughout the United States. I have gained experience conducting investigations through formal training and consultation with local, state, and federal law enforcement agencies as well as from the law enforcement investigations themselves. I have assisted in multiple criminal investigations and participated in numerous search and arrest warrants related to such investigations.

2.      As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2710(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.      The facts in this affidavit come from my personal observations, my training and experience, and from information obtained from other agents, witnesses, and law enforcement officers. This affidavit is intended merely to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of violations of the following statute(s), as described in Attachment B:

a.  Title 18 U.S.C. § 115(a)(1)(B) – Threats to assault, kidnap, or murder a United States official

## JURISIDCTION

5.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (C)(1)(A). Specifically, the Court is "a district court of the United States… that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711 (3)(A)(i).

## PROBABLE CAUSE

1.    On August 26, 2025, Southeast Wisconsin Threat Analysis Center (STAC) received a tip from the Wisconsin Statewide Intelligence Center (WSIC) Threat Analysis Unit that an individual appearing to be Andrew Stanton, date of birth (DOB) July 14, 1987, was making threatening statements using a TikTok account with username @halfdayandy1.1. The main concern expressed in the tip was the user's attempt at soliciting Israeli personal information. The text was recorded as "Do you have the known whereabouts of [Israel flag] IDF members in the IL/WI area? Feel free to dm me. We need verification that they are IN or served." The account @halfdayandy1.1 was removed before all videos could be reviewed, but separate accounts - @halfdayandy1.2 and @halfdayandy1.3 – contained similar rhetoric.

2.    On October 6, 2025, TikTok provided subscriber records which included email address a.stanton11@protonmail.com as associated with TikTok account @halfdayandy1.3 and

coopoverwatch11@gmail.com as associated with TikTok user @halfdayandy1.2. Comparison of STANTON's Driver's License photograph obtained from the Wisconsin Department of Transportation (DOT) against the white male featured in the posts in both the @halfdayandy1.2 and @halfdayandy1.3 TikTok accounts leads your affiant to believe that STANTON is the user of both accounts.

3.      On October 6, 2025, T-Mobile provided records indicating that the subscriber of telephone number 408-835-8596 was Andrew Stanton, DOB July 14, 1987, at 6603 23rd Avenue, Kenosha, Wisconsin 53143, and had been since December 16, 2024.

4.       On or about August 29, 2025, a video was posted by @halfdayandy1.3 in which STANTON stated, "We're not getting through to them [politicians] with using our words. That's never gonna happen. You have to use bullets." In a separate video posted on or about the same day, and which featured STANTON, text was superimposed on the screen which read, "I imply the very TRUE statement that a violent state can only be stopped with violence in return. / Also, I think we should be OFFING federal agents / Also, I support "terrorism" by their standard. Anti-imperialist by mine."

5.      On September 5, 2025, federal law enforcement officers attempted to conduct an interview with STANTON both in-person at 6603 23rd Avenue, Kenosha, WI and telephonically at 408-835-8596 but were unable to reach him. Federal law enforcement officers made similar attempts on September 9, 2025, but were again unable to reach STANTON.

6.      On or about September 10, @halfdayandy1.3 posted a video in which STANTON stated, "When there are mass shootings, they are successful. People die and people are terrorized. You can apply that to other people. Federal agents." On or about the same day, @halfdayandy1.3

posted a video in which STANTON stated, "Long day for me, and I'm not necessarily out here to be eloquent. I just want to say one thing. Do more Charlie Kirks. Do a lot more Charlie Kirks."

7.　　On September 11, 2025, a federal law enforcement officer (VICTIM 1) made additional attempts to contact STANTON both in-person at 6603 23rd Avenue, Kenosha, WI and telephonically at 408-835-8596. After these were unsuccessful, VICTIM 1 texted the same number, "Hi Andrew, please call me when you have a chance." VICTIM 1 received the reply "Who is this?" VICTIM 1 subsequently identified himself as Joe, a supervisor with the United States Customs and Border Protection assigned with the FBI and indicated that he wished to speak to STANTON about posts he had been making. During the course of the conversation, STANTON made clear he had no interest in speaking with law enforcement. After VICTIM 1 received a message from STANTON stating "Go fuck yourself", VICTIM 1 replied, "Copy. Thank you for your time."

8.　　STANTON continued to engage VICTIM 1 between approximately September 11, 2025 and September 12, 2025 with a series of messages and images, leading VICTIM 1 to block the number. Some of the messages from STANTON were transcribed below:

　　a.　"Please die. It will help future generations"

　　b.　"Kill yourself fed"

　　c.　"Hang yourself in your wife's closet so she discovers your corpse" / "Or maybe in one of your kids rooms" / "You'd be doing them a favor"

　　d.　"Does that green uniform stain real bad?"

e. "Let's meet" / "I'm not big into calling the cops so I'll bring my own form of justice. You've knocked on my door before. You know my address[1]. Let me know when your [sic] on the way"

f. "Mr border patrol with the FBI?" / "I'd like to meet." / "So we can discuss my mental health"

g. "If you're actually a fed, which at this point I'm for sure doubting. I hope it's and [sic] "illegal" that drops you, bury you, and piss on your grave" / That would be some poetic justice wouldn't it?"

9.     STANTON also sent a meme comprised of an animated representation of Charlie Kirk with a bleeding neck wound. A caption accompanied the image which stated, "This should be a lesson on how To [sic] deal with fascists. You don't Debate [sic] them, you delete them."

10.     On or about September 11, 2025, STANTON, as TikTok user @halfdayandy1.3 posted a video which included portions of the text conversation between himself and VICTIM 1 as well as the following caption, "To the agents on my file: Like I told the last guy, "get fucked pig"".

11.     On or about October 4, 2025, TikTok user @halfdayandy1.2 posted a video in which a white male matching the physical appearance of STANTON stated, "What the fuck are we even talking about here? If ICE shows up to your neighborhood – I'm sorry, I'm just gonna

---

[1] This acknowledgement simultaneously supports the belief that (1) STANTON was the one using the phone, (2) STANTON was aware of law enforcement's previous attempts to contact him, and (3) that the phone in question is primarily located within the Eastern District of Wisconsin as stated above in paragraph 4.

say it. It's time to start fucking shooting at them. If they show up to your neighborhood, and I'm talking you, Border Patrol Officer Joe[2], it's time we start shooting at you."

12.     Based on the foregoing, this affiant holds that it is reasonable to believe that STANTON has violated 18 U.S.C. § 115(a)(1)(B), Threats to Assault, Kidnap, or Murder a United States Official.

## BACKGROUND CONCERNING TIKTOK

13.     Based on my training and experience, my own familiarity with some of the products discussed, reviewing information published on government web sites and in law enforcement records, and law enforcement response guidelines published by TikTok, I know the following information about TikTok accounts in general and the specific categories of information sought in this affidavit.

14.     TikTok Inc., owned by the Chinese company ByteDance, is a company incorporated in California and headquartered in Culver City, California. Formerly branded as musical.ly, it is a freeware, cross-platform, short-form mobile video media application.

15.     TikTok owns and operates a free-access social-networking of the same name that can be accessed at http://www.tiktok.com or the network can be accessed as a mobile application on a cell phone or other electronic device capable of downloading the social media application. TikTok allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access TikTok through the TikTok

---

[2] As described in Paragraph 12, VICTIM 1 had identified himself to STANTON only as Joe, a CBP supervisor with the FBI.

website or by using a special electronic application (app) created by the company that allows users to access the service through a mobile device.

16. TikTok permits users to post videos or photos to their profiles on TikTok and otherwise share videos and photos with others on TikTok. When posting or sharing a photo on TikTok, a user can add a caption to the photo, can add various "tags" to the photo that can be used to search for the photo (e.g., a user may add the tag #vw to a photo so that people interested in Volkswagen vehicles can search for and find the photo), can add location information to the photo, and can add other information to photo, as well as apply a variety of "filters" or other visual effects that can be used to modify the look of the posted photos. In addition, TikTok allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of TikTok. Users can also "like" photos.

17. Upon creating a TikTok account, a TikTok user must create a unique TikTok username and an account password. This information is collected and maintained by TikTok.

18. TikTok asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to TikTok. Once an account is created, users may also adjust various privacy and account settings for the account on TikTok. This information is collected and maintained by TikTok.

19. TikTok allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on TikTok may come from either contact lists maintained by the user, other third-party social media websites and

information, or searches conducted by the user on TikTok profiles. This information is collected and maintained by TikTok.

20.     TikTok also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the user, which prevents the blocked user from following that user.

21.     TikTok allow users to post and share various types of user content, including photos, comments, and other materials. User content that is posted to TikTok or shared through TikTok is collected and maintained by TikTok.

22.     Users on TikTok may also search TikTok for other users or particular types of photos or other content.

23.     For each user, TikTok also collects and retains information, called "log file" information, every time a user requests access to TikTok, whether through a web page or through an app. Among the log file information that TikTok's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any refining/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

24.     TikTok also collects and maintains "cookies," which are small text files that are placed on a user's computer or mobile device and that allows TikTok to identify the browser or device's accesses to the service.

25.     TikTok also collects information on the particular devices used to access TikTok. In particular, TikTok may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access TikTok.

26.     TikTok also collects metadata associated with user content. For example, TikTok collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information. 63. TikTok users can also communicate privately with other TikTok users between each other, or they can communicate within "groups" of other TikTok users who all have the TikTok application on their electronic devices. Users can share photos, videos, and personal messages to one another within the application which cannot be viewed by other users within the same application.

27.     TikTok also may communicate with the user, by email or otherwise. TikTok collects and maintains copies of communications between TikTok and the user.

28.     Based on the information above, the computers of TikTok are likely to contain all the material described above with respect to the listed accounts, including stored electronic communications and information concerning subscribers and their use of TikTok, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

29.     This application seeks a warrant to search all responsive records and information under the control of TikTok, a provider subject to the jurisdiction of this court.

30.     As explained herein, information stored in connection with an account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the

information stored in connection with an account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the provider can show how and when the account was accessed or used. For example, as described below, providers typically log the Internet Protocol (IP) addresses from which users access the accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time. Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

31.     Similar to how law enforcement agents must search a person's entire residence to locate items of evidentiary value, agents often must search the entire contents of an account to be able to identify items of evidentiary value.

## SEARCH PROCEDURE

32.     From my training and experience, I know that providers cannot, on their own, identify individual items of potential evidentiary value within a customer's account.

Accordingly, this search warrant anticipates a multi-step approach for serving the warrant, obtaining responsive information from the provider, and then searching the responsive information to identify potential evidence. Pursuant to the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), I will serve the warrant on TikTok. TikTok will, at a later date, disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Attachment B. Once received, the government will search the records and information provided by TikTok to locate items and evidence relating to the crimes under investigation, specifically TikTok, and related offenses, including:

a.      Documents and records describing or identifying plans to kill, plans to shoot, plans to poison, and/or plans to otherwise harm, or cause serious injury or death to federal law enforcement officers;

b.      Communications between co-conspirators and all other evidence tending to show relationship between co-conspirators;

c.      Evidence indicating how and when the account was accessed or used, to determine the chronological context of account access, use, and events relating to the crime under investigation and the account owner;

d.      Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

e.      All items tending to show who was in control of the account and who used or owned the devices associated with this account including emails, images, recovery emails, cookies data, geolocation data, documents, IP logs, and other communication records; and

f.     All other information or items that constitute fruits, contraband, evidence, or instrumentalities of violations of the Target Offense, those violations involving STANTON and others occurring up to and including October 7, 2025.

## REQUEST FOR NON-DISCLOSURE

33.     I request that the Court order TikTok not to notify any person (including the subscribers or customers of the accounts listed in Attachment A) of the existence of the requested warrant before October 7, 2026, or until further order of the Court. TikTok is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). Pursuant to 18 U.S.C. § 2703, I seek a warrant requiring TikTok to disclose records and information in connection with a criminal investigation. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant … is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant … ." Id.

34.     Here, such an order is appropriate because the requested warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested warrant will seriously jeopardize the investigation, by endangering the life of physical safety of any person, giving targets an opportunity to flee from prosecution, destroy or tamper with evidence, or otherwise seriously jeopardize an investigation. See 18 U.S.C. § 2705(b).

35.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on TikTok who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## **ATTACHMENT A**

This warrant applies to the electronic data and information associated with the following TikTok accounts (the Accounts) that are store at premises owned, maintained, controlled, or operated by TikTok, Inc., a company headquartered at 5800 Bristol Parkway, Suite 100, Culver City, California 90230:

1. Username: @halfdayandy1.1 and any account tied to it by cookies or by user-provided identifiers such as email addresses or phone numbers.

# ATTACHMENT B

## Items to be Searched for and Seized

### Particular Things to be Produced By TikTok to the Government

A.       To the extent that the information described in Attachment A is within the possession, custody, or control of TikTok, including any messages, records, files, logs, or information that have been deleted but are still available to TikTok or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), TikTok is required to disclose the following information to the government for each account or identifier listed in Attachment A From the date the account was created to the present:

    a. Subscriber Information, as defined in TikTok's Law Enforcement Guidelines as containing, at a minimum, the following information: TikTok username, Email address(es), Phone number(s), Account creation date, IP address at account creation, Device information; Log-in / log-out data, as defined in TikTok's Law Enforcement Guidelines as containing IP address logs from account activity within the Accounts;

    b. Interaction data, as defined in TikTok's Law Enforcement Guidelines as containing non-content IP address logs for interactions as well as video creation time / dates associated with the Accounts;

    c. Content data, as defined in TikTok's Law Enforcement Guidelines as containing video content, comments, and direct message content.

B.       Once TikTok produces to the government the information described above, the government will search for information that constitutes evidence of violations of the crime(s)

under investigation, as further described in the affidavit, which is incorporated herein by reference.[3]

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

---

[3] The United States, and its forensic and law enforcement partners (the government), will seize the information described herein only for investigative purposes and for probable discovery pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Federal Rules of Criminal Procedure 16(a)(1)(E) and 26.2. The government will examine the seized information to identify information that is relevant to the matter under investigation and will thereby exercise respect for the information owner's personal and Constitutional privacy interests. Litigants are invited to contact the assigned AUSA to address privacy or other concerns.